IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KELLIE D. JOHNSON, Wife of      )
JIMMY D. JOHNSON, Deceased,     )
                                )
                    Plaintiff,  )
                                )
v.                              )       Case No. CIV-08-1235-HE
                                )
MICHAEL J. ASTRUE,              )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
                    Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Kellie D. Johnson, seeks judicial review of a final decision of the

Commissioner of the Social Security Administration denying her deceased husband's

application for supplemental security income benefits (SSI).[1]  This matter has been referred

for proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B) and (C).  For the

reasons set forth below it is recommended that the Commissioner's decision be reversed and

the case remanded for an immediate award of SSI benefits.

## I.      Procedural Background

Plaintiff's husband, Jimmy D. Johnson (claimant), filed his application for SSI on

August 23, 2001, alleging an inability to work beginning January 15, 2001.  *See*

Administrative Record [Doc. #13] (AR) at 58-60.  His application was denied initially and

on reconsideration. AR 37-40, 43-45.  Following a hearing, an Administrative Law Judge

---

[1]Mr. Johnson died on April 26, 2009, and his wife was substituted as the plaintiff. *See* Order
[Doc. #21].

(ALJ) issued an unfavorable decision on November 22, 2006. AR 23-32.[2]  The Appeals

Council denied claimant's request for review.  AR 8-11.  This appeal followed.

## II.     The ALJ's Decision

The ALJ considered claimant's eligibility to receive SSI based only on his application

filed on August 23, 2001.  AR 24.[3]  The ALJ followed the five-step sequential evaluation

process required by agency regulations.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731

(10th Cir. 2005); 20 C.F.R. § 416.920.  At step one, she determined that claimant had not

engaged in substantial gainful activity at any time relevant to the period under decision.  AR

24, 30.  At step two, the ALJ determined that claimant had the following severe impairments:

degenerative disc disease of the cervical spine, thoracic outlet syndrome, pain disorder

associated with both psychological factors and a general medical condition, adjustment

---

[2]Two prior unfavorable decisions on claimant's application were made by a different ALJ, and each of these decisions was vacated and remanded by the Appeals Council. The current decision under review followed the Appeals Council's second remand.  *See* AR 23 (reciting procedural history).  *See also* AR 280-288 (first ALJ decision, May 29, 2003); AR 293-295 (first remand order by the Appeals Council); AR 339-344 (second ALJ decision, September 24, 2004); AR 347-349 (second remand order by the Appeals Council, assigning the case to different ALJ).

[3]As the ALJ explained:

It is noted that the claimant filed two prior applications for supplemental security income.  He filed one application in 1985, and another on March 8, 1999 (protective filing date February 9, 1999), which was denied initially on June 7, 1999.  The claimant does not allege that he was under a disability until after his earlier claims were denied; thus, there is no reason to consider the question of whether the unfavorable determinations made with respect to the prior applications should be reopened and revised.  The Administrative Law Judge will consider only the question of whether he may receive benefits by virtue of his current claim.

AR 24.

disorder, learning disability, antisocial personality disorder, and a history of polysubstance dependence in remission. AR 24-26, 30. At step three, the ALJ found that claimant's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26, 30.

The ALJ next considered claimant's residual functional capacity (RFC). She determined that claimant had the RFC to perform the exertional demands of light work. She determined claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. He could stand/walk 6 hours out of an 8-hour day with normal breaks, and he could sit 6 hours out of an 8-hour day with normal breaks. He could occasionally stoop. He could not perform overhead work. AR 29, 31. As to his mental RFC, the ALJ determined claimant could understand, remember and carry out short, simple instructions. He had a slight inability to interact appropriately with the public and coworkers and moderate inability to interact appropriately with supervisors. He also had a moderate restriction on responding appropriately to work pressure in an unusual work setting, but no restriction on responding appropriately to changes in a routine work setting. AR 29, 31.

At step four, the ALJ concluded that claimant could perform his past relevant work as auto auction driver and convenience store clerk. AR 29, 31. However, the ALJ continued to step five of the sequential evaluation process because the vocational expert testimony indicated that claimant did not perform either of these jobs long enough to meet their specific vocational preparation (SVP) levels. AR 29, 31.

At step five, the ALJ found that claimant could perform work as an assembly line bakery worker, shirt ironer/presser, small parts assembler and hand cutter/trimmer. She further found that these jobs exist in significant numbers in both the local and national economy. AR 30, 31. The ALJ further found that the VE's opinions "are valid and supersede any discrepancies with the job definitions in the [DOT]." AR 30. The ALJ, therefore, determined that claimant was not disabled and not eligible for SSI. AR 30, 31.

## III.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh

the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV.    Issues Raised on Appeal

Ms. Johnson raises four issues on appeal: (1) whether the Appeals Council erred in failing to review the ALJ's decision in light of new and material evidence; (2) whether the ALJ provided an inaccurate hypothetical to the vocational expert (VE); (3) whether the ALJ improperly evaluated claimant's credibility; and (4) whether the ALJ failed to reconcile the VE's testimony with the job descriptions in the Dictionary of Occupational Titles (DOT) in accordance with Soc. Sec. Rul. 00-4p.[4]

As relief, Ms. Johnson seeks an immediate award of benefits   She relies on the fact that claimant's application was filed more than eight years ago.  She further relies on the fact that the case has been twice remanded at the agency level.

## V.    Analysis

### A.    The Appeals Council's Denial of Claimant's Request for Review

Following the ALJ's November 22, 2006, adverse decision, claimant submitted additional evidence to the Appeals Council which the Appeals Council made part of the record.  AR 11.  The additional evidence included medical records from the OU Medical

---

[4]Ms. Johnson's claims focus on findings related to claimant's physical impairments.  She does not challenge the ALJ's findings regarding claimant's mental impairments.  Therefore, the Court's review focuses only on those findings by the ALJ related to claimant's physical impairments.

Center for the time period March 1, 1999, through August 18, 2007, and August 30, 2007, through November 26, 2007. Claimant also submitted medical records from Griffith C. Miller, M.D., for the time period December 8, 2004, through August 7, 2007 and October 31, 2007, through February 6, 2008. In its denial of claimant's request for review, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision [of the ALJ] and the additional evidenced listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

AR 8-9. Ms. Johnson now argues that the Appeals Council erred because it provided no explanation as to why the additional evidence did not provide a basis for changing the ALJ's decision. *See* Opening Brief of Plaintiff [Doc. #23] at 14.

The Appeals Council's failure to provide such an explanation is not, in itself, grounds for reversal. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). Where, as here, the Appeals Council states that the additional evidence is being made part of the record, the Court interprets such a statement as an "implicit determination" that the additional evidence qualifies as new and material evidence for consideration. *Martinez*, 444 F.3d at 1207; *see also* 20 C.F.R. § 416.1470(b). Thus, "the Appeals Council adequately considered the additional evidence meaning that it evaluated the entire record including the new and material evidence submitted." *Id.* (quotations and citation omitted).

Because the Appeals Council considered the additional evidence, that evidence is now part of the administrative record. Therefore, in conducting a review for substantial evidence on the issues presented, the Court must consider this additional evidence. *Martinez*, 444 F.3d at 1208.

**B.      The ALJ's Hypotheticals to the VE**

Ms. Johnson next faults the ALJ's hypotheticals to the VE because the hypotheticals failed to include restrictions contained in the RFC completed by a consultative physician, Dr. Saidi. Ms. Johnson claims Dr. Saidi is the only examining physician who provided a physical RFC. In addition, Ms. Johnson claims the ALJ erred in failing to include limitations caused by headaches in the hypotheticals to the VE. Each of these claims is addressed in turn.

**1.      Dr. Saidi's Physical RFC**

The assessment of claimant's physical RFC by Dr. Saidi is the only RFC assessment in the record by an examining physician. Dr. Saidi opined that claimant could occasionally lift/carry 10 pounds, and frequently lift/carry less than 10 pounds. He opined that claimant could stand less than 2 hours in an 8-hour workday and sit less than 6 hours in an 8-hour workday. Claimant was limited in his ability to push and/or pull in both his upper and lower extremities. He could occasionally climb, kneel, crouch and stoop and frequently balance. AR 430-431. Dr. Saidi cited his findings of decreased range of motion in the lumbar and cervical spine, the hips, and the shoulders, and associated stiffness and pain as the medical findings supporting the RFC assessment. AR 431.

At the hearing before the ALJ, in response to questions asked by claimant's attorney, the VE testified that limitations consistent with Dr. Saidi's findings describe less than a full range of sedentary work and that none of the jobs described by the VE could be performed if these limitations were present. AR 576.

The ALJ determined claimant could perform the exertional demands of light work and thereby rejected the findings of Dr. Saidi regarding claimant's exertional limitations which would have precluded even sedentary work as the VE's testimony addressed. The ALJ stated: "Dr. Saidi found normal gait, motor strength, and motor and sensory functions. There is no objective evidence to explain any limitation on sitting or standing / walking what [sic] is required in sedentary work." AR 28-29. In making this determination, the ALJ ignored the very finding that Dr. Saidi stated he relied upon in making his RFC assessment. In his Orthopedic Evaluation, Dr. Saidi does, as the ALJ noted, state that claimant had normal gait, motor strength and motor and sensory functions. AR 425. He further found, however:

> Cervical spine with flexion, extension, lateral flexion and rotation is decreased associated with pain and stiffness. Dorsolumbar flexion, extension and lateral flexion is decreased associated with pain and stiffness. Hip joints with internal rotation, external rotation, abduction, adduction, forward flexion and backward flexion are decreased associated with pain and stiffness. . . . Shoulder joints with forward elevation, abduction, adduction, external rotation and internal rotation are decreased associated with pain and stiffness . . . .

AR 425. These findings are also recorded in the Range of Joint Motion Evaluation Chart. AR 426-429. In addition, as his final impression, Dr. Saidi noted the claimant's "history of degenerative disk disease of the lumbar spine and cervical spine" and that claimant was "status post fusion of the lumbar spine." AR 425. Contrary to the ALJ's finding, therefore,

objective medical evidence does exist to support the limitations set forth in Dr. Saidi's physical RFC. The ALJ's failure to address the evidence supporting Dr. Saidi's physical RFC findings constitutes error. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted).

In addition to this error, the ALJ did not properly analyze the weight given to Dr. Saidi's opinion. Although the ALJ clearly rejected Dr. Saidi's opinion, he did not "specify what *lesser* weight he assigned to [Dr. Saidi's] opinion," *see Robinson*, 366 F.3d at 1083, or discuss any of the relevant factors set forth in 20 C.F.R. § 416.927. *Id.*

The record includes an RFC assessment by a non-examining consultant completed in October 2001. AR 265-272. This RFC assessment opines that claimant could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. Further, claimant could stand or walk about 6 hours in an 8-hour workday and sit for a total of about 6 hours in an 8-hour workday. The RFC provides that claimant would have unlimited restrictions on his ability to push and or pull. As to postural limitations, he could occasionally stoop but frequently climb, balance, kneel, crouch and crawl. AR 267.

The ALJ appears to have adopted the findings set forth in this RFC assessment with respect to these limitations. However, the ALJ's analysis of claimant's physical RFC is wholly void of any reference to the non-examining consultant's RFC assessment.[5]

_____

[5]The ALJ's decision contains one citation to exhibit 13F, the non-examining consultant's physical RFC assessment. AR 26. However, the citation includes reference to additional exhibits

(continued...)

Moreover, as a consultative examiner, Dr. Saidi's opinion was entitled to more weight than that of the non-examining consultative physician. *See Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (*citing* 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *2).

In this regard, it is significant to note that the non-examining consultant completed the review of the medical evidence in October 2001 and February 2002. In addition to back surgery in approximately 1986, claimant's physical impairments stem from a motor vehicle accident in 1998 resulting in injuries to his neck, and an accident in January 2001, which occurred while claimant was driving a dump truck. The latter accident resulted in further injuries to claimant's neck and left shoulder. AR 100-102. In addition, in April 2002 claimant was diagnosed with thoracic outlet syndrome. AR 273-279.[6] Further, MRIs in December 2004 and August 2007, showed cervical spondylosis, C5-C6 disc protrusion with central canal stenosis and degenerative disc disease. AR 435-436, 454-455. Dr. Saidi examined claimant in May 2006. His opinion, therefore, is based on a more thoroughly

---

[5](...continued)
and is made in the context of the ALJ's findings of claimant's mental RFC. *Id*. There is no actual discussion of the non-examining consultative physician's RFC by the ALJ.

[6]Thoracic outlet syndrome is defined as "[a] group of ill-defined syndromes characterized by symptoms of pain and paresthesias in the hand, neck, shoulder, or arms." *The Merck Manual* § 14 at 1491 (17th ed. 1999). A CT scan in October 2007 showed no evidence to explain claimant's thoracic outlet syndrome. AR 448-449.

developed medical record documenting claimant's continuing problems associated with his back, neck and shoulder impairments than the record reviewed by the non-examining consultative physician.

It is also significant that the opinion of Dr. Saidi is consistent with findings set forth in the treatment records from the claimant's treating physician, Griffith Miller, M.D. In May 2006, Dr. Miller provided a progress report. Dr. Miller stated that he had been treating claimant "for a long, long time; actually as far back as 02/14/04." AR 469. On physical examination, Dr. Miller found:

> [S]evere pain in the cervical area to palpation with limited range of motion, severe pain in the lumbar area to palpation with limited range of motion, and he does have symptoms of thoracic outlet syndrome. His pulse is diminished at a level of 90 degree elevation of his right arm.

AR 469. Dr. Miller further provided his medical opinion as to recommended treatment:

> It is my medical opinion that his pain is 8 on a 0 to 8 scale and that we should maintain him on Lortab 10mg q. 6 h. for his neck pain which is intractable, and his thoracic outlet pain, and Xanax 2 mg q. 8 h. for anxiety, and Soma q. 8. to relax the musculature.

*Id.*

Treatment records from Dr. Miller spanning the time period 2004 through 2008 were submitted to the Appeals Council and, as discussed in relation to Ms. Johnson's first claim, are considered in determining whether the ALJ's findings are supported by substantial evidence. These treatment records include the December 2004 MRI findings, *see* AR 479-480, referenced by Dr. Miller in his May 2006 progress report. In addition, the treatment records document, consistent with Dr. Saidi's findings, claimant's decreased range of motion

and complaints of neck pain. Dr. Miller's treatment notes also reflect continued prescriptions of Lortab and Soma for management of claimant's pain. AR 456-480. Where, as here, a treating physician's opinion is well supported by the medical record and consistent with other substantial evidence in the record, that opinion is entitled to controlling weight. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Thus, Dr. Miller's records further demonstrate that the ALJ's physical RFC findings are not supported by substantial evidence.

## 2. Limitations Caused by Headaches

Ms. Johnson further challenges the ALJ's hypotheticals to the VE on grounds that the ALJ omitted any restrictions due to frequent headaches. The ALJ made the following finding regarding claimant's headaches:

> While [claimant] indicates frequent to almost constant headaches, the record shows only occasional tension headaches. Despite the claimant's complaints of frequent headaches, no examining physician has noted the presence of a headache at any scheduled appointment. It appears that Mr. Johnson's only recent treatment has consisted of merely prescribing pain medications. There is no documented abnormality other than Mr. Johnson's subjective complaints of pain.

AR 27-28. As Ms. Johnson points out in her Brief in Support, from January 2001, the record is replete with references to claimant's complaints of severe and chronic headache, including the presence of headaches at the time of examination as well as prescribed treatment for headaches. *See, e.g.,* AR 101, 107, 117, 192, 195, 198, 229, 414, 423, 483, 487, 488, 490-494, 499. In addition, the record includes a note from a former employer stating that in September 2003, claimant had to quit his job because "he was missing work do [sic] to his

headaches and neck pain."[7]  AR 335.  The ALJ did not cite any evidence of record to support

the finding rejecting any limitation due to claimant's frequent headaches.  And, the ALJ did

not discuss the medical evidence of record regarding claimant's headaches in formulating the

RFC assessment.  Because there is some evidence in the record to indicate that the frequency

and severity of headaches constitutes a non-exertional impairment, the ALJ's failure to

address this evidence constitutes additional error.

In sum, the ALJ's physical RFC findings and consequent hypotheticals to the VE are

not supported by substantial evidence.  The ALJ did not properly analyze the opinion of Dr.

Saidi, consider other relevant medical evidence of record or weigh the medical evidence in

accordance with applicable rules and regulations.  These errors require reversal.

### C.    The ALJ's Credibility Determination

Ms. Johnson next claims the ALJ improperly evaluated claimant's credibility.  The

parties do not dispute that claimant suffered from pain-producing impairments supported by

objective medical evidence and that a loose nexus exists between those impairments and

claimant's allegations of headaches and other pain.  *See Luna v. Bowen*, 834 F.2d 161, 163

---

[7]The Commissioner attempts to discount Dr. Saidi's RFC findings in part, based on a return to work by Dr. Rowe, a physician who saw claimant in relation to a worker's compensation claim. AR 116-119.  The ALJ did not rely on this evidence when addressing Dr. Saidi's RFC, however, and the Court is prohibited from making post-hoc justifications.  *See Robinson v. Barnhart*, 366 F.3d at 1084 (the decision of the ALJ is "evaluated based solely on the reasons stated in the decision," without engaging in a "post hoc effort to salvage" it).  Moreover, Dr. Rowe's return to work is dated May 14, 2001.  The subsequent developments in the record, including the evidence from claimant's employer in September 2003, diminish the significance of Dr. Rowe's return to work.

(10th Cir. 1987). The ALJ, therefore, was required to assess the credibility of claimant's subjective complaints and, in doing so, consider various factors such as:

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

The ALJ first found not credible claimant's complaints of residual headaches and neck pain following the injuries to his neck and left shoulder. AR 27. Without citation to the medical record, the ALJ found that the problems from these injuries "improved with minimal treatment." AR 27. The ALJ noted that "he has good passive motion, good gait, and normal motor and sensory function." *Id*. Again, the ALJ makes no citation to the medical record to support this finding nor does the ALJ explain how these findings relate to headaches and neck pain. Indeed, that claimant's gait is normal is in no way indicative of whether his complaints of headaches and neck pain are credible. The ALJ then states:

> While he now takes prescriptive pain medications, he testified that in 2001, he used only over-the-counter pain medications. While he indicates frequent to almost constant headaches, the record shows only occasional tension headaches. Despite the claimant's complaints of frequent headaches, no examining physician had noted the presence of a headache at any scheduled appointment. It appears that Mr. Johnson's only recent treatment has consisted of merely prescribing pain medications. There is no documented abnormality other than Mr. Johnson's subjective complaints of pain.

AR 27-28.

The ALJ's findings are not supported by substantial evidence. First, the ALJ is required to closely and affirmatively link his credibility findings to substantial evidence, s*ee Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988), but here, the ALJ made no citation to the record. Second, the record demonstrates that the ALJ's conclusions are contradictory to the medical evidence of record. In cursory fashion at the hearing, the ALJ made the following inquiry: "In '01, it indicates that you were just taking Tylenol. Is that correct?" Claimant responded, "Yes." AR 567. The ALJ made no additional inquiry. Yet, the medical evidence demonstrates claimant was prescribed pain medication on numerous occasions during 2001 as well as before and after that time period. AR 206 (Lortab 7/7/2000); AR 100-102 (Flexeril, Naprosyn and Darvocet 1/26/2001); AR 109 (Zanaflex and Esgic 4/1/2001); AR 192 (Lortab 7/18/2001); AR 195 (Flexeril, Toradol 5/4/2001); AR 230 (trigger point injection, Cyclobenzaprine and Ibuprofen 800 mg 8/18/ 2001); AR 254 (Ultracet and Norflex 11/13/01); AR 226 (multiple trigger point injections 4/6/01 - 5/16/2001); AR 493 (Inderal and Depakote 8/21/2002); AR 488 (Ultram 11/27/2002); AR 332-333 (list of medications including hydrocodone for pain 7/27/2004); AR 457-478 (Lortab, Soma 12/16/2004 - 2/26/2008); AR 451 (Lortab, Soma 10/2007). In addition, at each of the administrative hearings claimant testified he was taking hydrocodone. AR 508 (2003 hearing); AR 530-531 (2004 hearing); AR 552 (2006 hearing). The ALJ's rejection of claimant's credibility on grounds he was only taking over-the-counter medication is not supported by substantial evidence.

At prior hearings before the ALJ, claimant testified about the severity of his headaches and the treatment for those headaches. At the hearing on April 23, 2003, claimant said he took Ibuprofen and over-the-counter medications. AR 507. But he further explained that he would go to the emergency room where he would receive "pressure point shots at the base of [his] skull" and a "script of hydrocodone 715 like 5 or 10 of them and they send me home." AR 507. He further explained he could not tolerate the hydrocodone on full strength basis – that it actually made his headaches worse. AR 508. In addition, he explained that because he was a recovering drug addict, he did not like to take narcotic drugs. AR 508. At the second hearing on August 16, 2004, claimant testified that he was receiving weekly manipulation treatment from a doctor of osteopathy and taking hydrocodone, 7.5 milligrams, 30 tablets per week and taking Soma, 30 tablets per week. AR 531. In addition, as discussed in relation to Ms. Johnson's second claim for relief, the medical record contains numerous instances where claimant presented for medical treatment due to severe headaches. Finally, claimant's treating physician, Dr. Miller, addressed claimant's continuing need for pain medication. Based on this evidence, the ALJ's credibility determination as to claimant's pain medications and headaches is not supported by substantial evidence.

The ALJ also found claimant not credible based on drug and alcohol use and his demeanor at the hearing. Ms. Johnson largely disputes the ALJ's view of the evidence as to these matters and relies on evidence to the contrary. However, the court may not reweigh

the evidence in determining whether the ALJ's credibility finding is supported by substantial

evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).[8]

Finally, Ms. Johnson challenges the ALJ's rejection of claimant's credibility based

on his activities of daily living. The ALJ made the following findings regarding claimant's

activities of daily living:

> The claimant has reported a variety of daily living activities that contraindicate
> a level of pain and lack of functioning as he alleges. He lives with his
> girlfriend and her children. He testified that he drives very little, lies in bed
> and watches television, sometimes does laundry, cooks light meals, and
> occasionally goes to soccer games. Mr. Johnson told Dr. Swink that he was
> able to drive and did not describe any limitations with this. He also said that
> he occasionally helped with laundry, cooked light meals, shopped, and enjoyed
> socializing with his girlfriend and her children (Exhibit 15F). In contrast, the
> claimant told Dr. Saidi only two months later that he was unable to do his
> chores or work, then four months later at the hearing, the claimant reported the
> same activities that he discussed with Dr. Swink.

AR 28. Dr. Swink conducted a psychological consultative examination of claimant on March

27, 2006. The ALJ did not include in the credibility findings claimant's statement to Dr.

Swink that "sometimes he is in such pain that he wishes he were dead" or that because of the

stress of driving to see Dr. Swink, claimant described his pain at 9 on a pain scale from 1 to

10 where 1 is no pain and 10 is excruciating pain. AR 413, 414. Nor did the ALJ discuss

Dr. Swink's diagnosis of "pain disorder associated with both psychological factors and a

---

[8]For example, claimant testified at the September 6, 2006 hearing that he was arrested in
January 2005 on charges of driving under the influence but that he was under the influence from the
combination of his medications, Lortab, Soma and Xanax, and some cough syrup he had taken that
day. AR 559-560. Conversely, the ALJ relied on statements by a consultative psychologist, Dr.
Swink, indicating that claimant had used marijuana in February 2004. AR 413. Although claimant
adamantly testified that he had maintained his sobriety since 1994, *see* AR 551, the record does
contain evidence upon which the ALJ could have made her finding to the contrary.

general medical condition." AR 417. In addition, the ALJ did not discuss Dr. Swink's diagnostic impression that claimant's "conditions appear to be chronic and are not likely to improve over the coming 12 months." AR 417. While a few months later, Dr. Saidi reported that claimant "is not able to do his daily chores or work," Dr. Saidi did not provide extensive analysis of claimant's daily activities and contrary to the ALJ's determination, this cursory statement is not inconsistent with claimant's statements both to Dr. Swink and at the hearings before the ALJ that he could do occasional household chores.

Evidence showing the ability to perform minimal activities of daily living is not, by itself, substantial evidence a claimant can work. "The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir.1993). The ALJ's analysis of claimant's activities of daily living, therefore, is flawed and substantial evidence does not support the ALJ's finding.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston*, 838 F.2d at 1133 (footnote omitted). As set forth above, the link between the ALJ's credibility determination and the

evidence of record is missing. Therefore, the ALJ's credibility analysis rejecting claimant's subjective complaints of pain is not supported by substantial evidence.[9]

**D.      The ALJ's Duty to Reconcile Inconsistencies Between the VE's Testimony and the DOT**

As set forth above, the ALJ made an alternative step five finding that claimant could perform other work including unskilled light work as an assembly line bakery worker, unskilled light work as shirt ironer/presser, or unskilled sedentary work as a small parts assembler or hand cutter/trimmer. AR 30. The ALJ determined these jobs exist in significant numbers in the local and national economy. The ALJ then stated that she "accepts the testimony and opinions of the vocational expert and finds that his opinions are valid and supersede any discrepancies with the job definitions in the Dictionary of Occupational Titles (DOT) (S.S.R. 00-4p)." AR 30.

Ms. Johnson faults the ALJ for not reconciling inconsistencies between the VE's testimony and the DOT. "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); s*ee also* Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *4 ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any conflict

---

[9]The Commissioner offers a post-hoc justification for the ALJ's credibility findings regarding claimant's activities of daily living. *See* Commissioner's Response Brief [Doc. #24] at 12. As previously noted, the Court is prohibited from making such post-hoc justifications.

between that . . . evidence and information provided in the DOT."). The record of the hearing shows the VE identified, by DOT number, jobs that could be performed by a hypothetical individual with restrictions matching the ALJ's RFC determination for claimant. AR 573-575.[10] At the hearing, the ALJ did not inquire as to whether the VE's opinion was consistent with the DOT nor did the VE provide any testimony on this issue. The ALJ, therefore, erred by failing to comply with Soc. Sec. Rul. 00-4p. *See Poppa v. Astrue*, *supra*, 569 F.3d at 1173 (finding the ALJ erred "by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT"). However, Ms. Johnson does not identify, nor does the Court see, any conflict between the VE's testimony and the DOT job descriptions. Accordingly, any error in the ALJ's statement is harmless. *Compare Martinez v. Astrue*, 316 Fed. Appx. 819, 826 (10th Cir. March 19, 2009) (unpublished op.) (ALJ's failure to ask VE if his opinion was consistent with DOT as required by SSR 00-4p constituted harmless error where claimant failed to identify any such conflict inherent in the VE's testimony). *See also Poppa*, 569 F.3d at 1174 ("Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless."). This error, therefore, is not itself a ground for reversal.

---

[10] The VE provided the following corresponding DOT descriptions: DOT 732.684-062 (small parts assembler); DOT 734.687-094 (hand cutter/trimmer); DOT 363.685-026 (shirt ironer/presser); and DOT 524.687-022 (assembly line baker). AR 573-575.

### E.   Ms. Johnson's Request for an Immediate Award of Benefits

Ms. Johnson asserts, and the Court agrees as set out above, that the Commissioner's decision is not supported by substantial evidence and should be reversed and remanded. Ms. Johnson further requests that the Court remand for an immediate award of benefits. Under sentence four of the statute granting judicial review of the Commissioner's final decisions, 42 U.S.C. § 405(g), this Court has authority to enter a judgment affirming, modifying, or reversing the Commissioner with or without remanding the cause for rehearing. 42 U.S.C. § 405(g). Whether to remand for an immediate award of benefits is within the Court's discretion. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Factors to consider include the length of time the matter has been pending and whether, based on the available evidence, a remand for additional fact-finding would serve any useful purpose. *Salazar*, 468 F.2d at 626; *see also Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988) ("Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.") (*quoting Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987)).

The length of time this matter has been pending weighs in favor of an immediate award of benefits. Claimant's application for benefits was filed in 2001. Three administrative hearings have taken place, two of which followed a remand by the Appeals Council to correct deficiencies in the fact-finding process.

The more significant question is whether a remand would serve any useful purpose. The primary error presented in Ms. Johnson's request for judicial review is that substantial

evidence does not support the ALJ's physical RFC finding that claimant could perform light work. A consideration of the entire administrative record compels an immediate award of benefits. The first administrative decision resulted in an RFC finding that claimant could perform medium work. AR 288. The Appeals Council remanded the decision, in part, because the ALJ's RFC determination was not supported by substantial evidence. AR 294-295. On remand, the ALJ determined claimant had the RFC for sedentary work. AR 343. The Appeals Council again remanded the decision noting the medical evidence had not been updated and further development of the record was warranted. AR 347-348. Additionally, the Appeals Council required further consideration of the claimant's RFC and directed the ALJ to provide "appropriate rationale with specific references to evidence of record in support of the assessed limitations." AR 348.

In the third administrative decision, a different ALJ determined claimant could perform light work. Thus, at the administrative level, claimant has received vastly inconsistent RFC determinations covering the range of sedentary, light and medium work. As discussed above, the most recent RFC determination of light work is contrary to the opinion of the only examining physician to provide an RFC assessment. Based on that physician's assessment, claimant could not even perform sedentary work. The VE testified that no jobs existed that could be performed by an individual with limitations matching this RFC assessment. Moreover, the RFC assessment of the examining physician is consistent with the medical records of claimant's treating physician and the other medical evidence of record.

Under the circumstances presented here, it is recommended that Ms. Johnson's request for remand with an immediate award of benefits be granted as further fact finding would serve no useful purpose. *See, e.g., Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir.1993) (remanding for award of benefits in similarly protracted case, and admonishing that the SSA "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion" (quotation omitted)); *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) (remanding for award of benefits "[i]n light of [SSA's] patent failure to satisfy [its] burden of proof at step five, and the long delay that has already occurred as a result of [its] erroneous disposition of the proceedings").

Accordingly, it is recommended that this case be remanded to the Appeals Council with directions that appropriate benefits be awarded to Ms. Johnson.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and the case remanded for an immediate award of SSI benefits.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by March __31[st]__, 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the

right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __10th__ day of March, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE